
# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: November 1, 2017
UNPUBLISHED

\* \* \* \* \* \* \* \* \* \* \* \* \* \*
PHILIP TETLOCK *and* BARBARA
TETLOCK, *Administrators of the Estate*
*of* J.T., *Deceased*,                                         No. 10-56V

      Petitioners,

v.                                                                              Chief Special Master Dorsey

SECRETARY OF HEALTH
AND HUMAN SERVICES,                                Interim Attorneys' Fees & Costs;
                                                                             Appropriate Hourly Rates; Vague,
      Respondent.                                           Excessive, and Block Billing

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Lawrence R. Cohan, Anapol Weiss, Philadelphia, PA, for petitioners.
Debra A. Begley, United States Department of Justice, Washington, DC, for respondent.

**DECISION ON AWARD OF INTERIM ATTORNEYS' FEES AND COSTS**

      On January 27, 2010, Philip Tetlock and Barbara Tetlock ("petitioners") filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"),[1] 42 U.S.C. § 300aa-10 et seq. (2012), as the administrators of the estate of J.T., deceased. Petitioners alleged that as a result of receiving her third Human Papillomavirus ("HPV" or "Gardasil") vaccine on March 1, 2007, J.T. died on March 15, 2009. See Petition at Preamble, ¶¶ 13, 14. Petitioners now request an award of interim attorneys' fees and costs.

    **I.    Procedural History**

      An entitlement hearing was held in Washington, D.C. on January 26 and 27, 2017, and continued on March 10, 2017. Thereafter, on August 7, 2017, petitioners filed a Motion for Interim Attorneys' Fees and Costs ("Motion"). Petitioners request interim attorneys' fees in the

---

[1] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

amount of $292,587.50 and costs in the amount of $149,816.01. Motion at 3. In compliance with General Order #9, petitioners stated that they have not advanced any funds in the prosecution of this claim. Id. at Exhibit F. Thus, petitioners' total interim request is $442,403.51. Id. at 3.

Respondent filed a response to petitioners' motion on August 25, 2017. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Id. at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. at 2. Respondent "respectfully recommends that the Chief Special Master exercise her discretion and determine whether an award for interim attorneys' fees and costs is warranted and, if so, what a reasonable award should be." Id. at 3.

On September, 29, 2017, the undersigned issued an order directing petitioners to file invoices and receipts for the expenses incurred by counsel and by their experts, as their original motion only included a list of the expenses incurred without supporting documentation. Order dated September 29, 2017. Petitioners filed additional documentation on October 6, 2017, but still did not include invoices or receipts for many of the expenses listed, namely for hotel stays, meals while traveling, and transportation to and from the hearings. Additional Documentation dated October 6, 2017. The undersigned then issued a second order directing petitioners to file the invoices and receipts, as she is unable to reimburse those expenses that do not include the appropriate documentation. Order dated October 12, 2017. Petitioners again filed additional documentation on October 13, 2017. Additional Documentation dated October 13, 2017. Petitioners indicated that receipts could not be located for several of the expenses, and that petitioners' counsel will absorb those costs for which they cannot provide the appropriate supporting documentation. Id. at 2.

## II. Discussion

Petitioners are entitled to an interim award of reasonable attorneys' fees and costs if the undersigned finds that they brought their petition in good faith and with a reasonable basis. § 300aa-15(e)(1); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008); Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 154 (Fed. Cl. 2012); Friedman v. Sec'y of Health & Human Servs., 94 Fed. Cl. 323, 334 (Fed. Cl. 2010); Doe 21 v. Sec'y of Health & Human Servs., 89 Fed. Cl. 661, 668 (Fed. Cl. 2009); Bear v. Sec'y of Health & Human Servs., No. 11-362v, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013); Lumsden v. Sec'y of Health & Human Servs., No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). A petitioner "bears the burden of establishing the hours expended." Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 484 (1991) (affirming special master's reduction of fee applicant's hours due to inadequate recordkeeping), aff'd after remand, 988 F.2d 131 (Fed. Cir. 1993) (per curiam). Reasonable attorneys' fees are determined by "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs, Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994), and

may increase or reduce the initial fee award calculation based on specific findings. Avera, 515 F.3d at 1348.

In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484, rev'd on other grounds and aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

In Avera, the Federal Circuit stated, "Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In Shaw, the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.

Petitioners have been litigating this claim for more than seven years and have retained and used the services of three expert witnesses. The undersigned finds it reasonable to award interim attorneys' fees and costs at this juncture, but, for the reasons detailed below, will reduce the award from the requested $442,403.51 to $345,541.20.

### a. Reasonable Attorneys' Fees

#### i. Requested Hourly Rates

Petitioners request compensation for their attorneys, Mr. Lawrence Cohan, Mr. David Carney, and Ms. Melissa Hague. Mr. Cohan requests a rate of $400.00 per hour for work performed between November 2008 and March 2017. Motion at 2. Mr. Carney requests a rate of $225.00 per hour for work performed between January 2010 and August 2014; a rate of $275.00 per hour for work performed between September 2014 and August 2016; and a rate of $290.00 per hour for work performed between September 2016 and August 2017. Id. Ms. Hague requests a rate of $275.00 per hour for work performed between July 2009 and January 2011. Id. at 3. In addition to their attorneys, petitioners also seek compensation for paralegals who worked on the case at a requested rate of $135.00 per hour. Id.

The requested hourly rates for Mr. Carney have previously been found reasonable. Rodd v. Sec'y of Health & Human Servsl, No. 13-122V, 2016 WL 2727147 (Fed. Cl. Spec. Mstr. Apr. 13, 2016); M.G. v. Sec'y of Health & Human Servs., No. 15-344V, 2017 WL 1228701 (Fed. Cl. Spec. Mstr. March 7, 2017). The undersigned also finds them reasonable and awards them in full.

Mr. Cohan's requested hourly rate for work performed between 2014 and 2017 has also previously been found reasonable. Katora v. Sec'y of Health & Human Servs., No. 16-1086V, 2017 WL 4401942 (Fed. Cl. Spec. Mstr. Sept. 6, 2017); M.G. v. Sec'y of Health & Human

Servs., No. 15-344V, 2017 WL 1228701 (Fed. Cl. Spec. Mstr. March 7, 2017). These rates are also consistent with the ranges provided in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, *16 (Fed. Cl. Spec. Mstr. Oct. 18, 2016), and the Office of Special Masters' Fee Schedules ("Fee Schedule").[2] The undersigned also finds Mr. Cohan's requested rates for those years to be reasonable and awards them in full.

      Mr. Cohan's hourly rate for work performed before 2014 requires adjustment for consistency with McCulloch and the Fee Schedule. His hourly rate will be reduced according to the producer price index for lawyers ("PPI-OL")[3] for those years.[4] The requested hourly rate for Ms. Hague also requires adjustment. Petitioners suggest that Ms. Hague should be entitled to McCulloch rates for attorneys with 4-7 years of experience because she was an associate at Anapol Weiss for 4 years when she billed hours to the case. Motion at 4. However, Ms. Hague was licensed in October 2006.[5] She performed work on the case between July 2009 and January 2011, which means she had 3-5 years of experience while she billed hours the case. Ms. Hague's hourly rate will also be reduced for consistency with McCulloch and the Fee Schedule.[6]

---

[2] See OSM Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed September 29, 2017).

[3] The PPI-OL data is available at www.bls.gov/ppi/#data. The industry code for "Offices of Lawyers" is 541110.

[4] The special masters have found the PPI-OL to be a persuasive measure of inflation. See OSM Attorneys' Forum Hourly Rate Fee Schedule: 2017. To apply a reduction for prior years based on the PPI-OL, the undersigned multiplied the existing hourly rate (in this case 2014) by the PPI-OL Index for January of the year to which the rate is being adjusted (i.e. years 2008-2013), then divided by the PPI-OL Index for January of the year of the existing rate. Thus, Mr. Cohan's hourly rates were calculated as follows:

$$2008: \$400*159.9/192.7 = \$332 \text{ (as rounded)}$$
$$2009: \$400*164.8/192.7 = \$342 \text{ (as rounded)}$$
$$2010: \$400*169.6/192.7 = \$352 \text{ (as rounded)}$$
$$2011: \$400*176.6/192.7 = \$367 \text{ (as rounded)}$$
$$2012: \$400*182.0/192.7 = \$378 \text{ (as rounded)}$$
$$2013: \$400*185.8/192.7 = \$386 \text{ (as rounded)}$$

[5] See PA Attorney Information at http://www.padisciplinaryboard.org/look-up/pa-attorney-search.php and NJ Attorney Index at https://portal.njcourts.gov/webe5/AttyPAWeb/pages/attorneySearch.faces.

[6] When Ms. Hague began billing in this case in 2009, she had three years of experience. At that level of experience, a reasonable hourly rate would have been $150 per hour in 2015. See OSM Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016. Thus, her hourly rate for 2009 is calculated based on this rate. Beginning in 2010, however, Ms. Hague moved into the tier of attorneys with 4-7 years of experience. Therefore, her hourly rates for 2010 and 2011 is calculated based off of a reasonable hourly rate for 2015 of $225. Thus, using the same formula applied to Mr. Cohan's rates (see fn. 4, above), her hourly rates were calculated as follows:

The hourly rates to be awarded are as follows:

|  | **Mr. Cohan** | **Mr. Carney** | **Ms. Hague** |
| --- | --- | --- | --- |
| **2008** | $332 | -- | -- |
| **2009** | $342 | -- | $126 |
| **2010** | $352 | $225 | $194 |
| **2011** | $367 | $225 | $202 |
| **2012** | $378 | $225 | -- |
| **2013** | $386 | $225 | -- |
| **2014** | $400 | $225/$275 | -- |
| **2015** | $400 | $275 | -- |
| **2016** | $400 | $275/$290 | -- |
| **2017** | $400 | $290 | -- |

### ii. Requested Hours

The second factor in the lodestar formula is a reasonable number hours expended. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Shorkey v. Sec'y of Health and Human Servs., No. 15-768C, 2017 WL 2119118 (Fed. Cl. Spec. Mstr. April 21, 2017); Saxton v. Sec'y of Health and Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

### 1. Excessive Billing Entries

The undersigned has previously found it reasonable to reduce the fees paid to petitioners due to excessive billing and intra-office communication. See Panaitescu v. Sec'y of Health & Human Servs., No. 16-753V, 2017 WL ------- (Fed. Cl. Spec. Mstr. Oct. 2, 2017) (reduced counsel's overall fee award due to billing for excessive email correspondence with the client and with each other); See also Ericzon v. Sec'y of Health & Human Servs., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced counsel's overall fee award by 10 percent due to excessive and duplicative billing). The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case and have reduced fees accordingly. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009).

After carefully reviewing the billing records submitted with petitioners' motion, the undersigned finds that counsel billed for excessive communication with their client.[7] Counsel billed numerous times for emails and telephone calls with their client, and many of those entries are also vague and duplicative. For example, counsel billed 5 entries that all read: "emails to and from client with literature;" 9 entries that all read: "[telephone call] with client re case status,

---

2009: $150*164.8/196.8 = $126 (as rounded)
2010: $225*169.6/196.8 = $194 (as rounded)
2011: $225*176.6/196.8 = $202 (as rounded)

[7] See Motion, Exhibit A at 2-5, 7, 9-12.

next steps, case progress re experts and genetic testing;" and 23 entries that all read: "emails to and from client re case status, treating docs, expert retention, literature." These entries are clearly duplicative and do not reflect the actual work performed well enough to determine the reasonableness of the hours expended on each task.

Counsel also billed excessively for emails to and from the DOJ regarding hearing dates and for telephone calls regarding genetic testing, and these entries are equally as vague and duplicative. Motion, Exhibit A at 7, 17, 19. Counsel also billed for excessive intra-office communication, including meetings with each other, which is disallowed in the Program.[8]

The undersigned also finds that petitioners' counsel billed for excessive amounts of time to complete various tasks. For example, counsel billed 6.9 hours to draft and file the petition. Motion, Exhibit A at 4. In the span of four days, counsel billed 13.5 hours for reviewing medical records. Id. at 10. Counsel also billed 72.8 total hours for time spent drafting their pre-hearing brief, which the undersigned finds very excessive. Id. at 17-8. Perhaps the most egregious example of counsel billing excessive hours is that they billed 314.4 hours for "Trial Prep," and 37.4 hours for "Rebuttal Prep." Id. at 19-25.

Not only were the hours billed for trial prep and rebuttal prep particularly excessive, but they were also often block-billed.[9] For example, most of the billing entries for trial prep are billed in blocks in excess of 4 hours, and many are in excess of 10 hours. Id. It is well-established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez, 2009 WL 2568468. Petitioner bears the burden of documenting the fees and costs claimed. Id. at *8. Block-billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored. Broekelschen v. Sec'y of Health & Human Servs., 2008 U.S. Claims LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block-billing); see also Jeffries v. Sec'y of Health & Human Servs., 2006 U.S. Claims LEXIS 411, at *8 (Fed Cl. Spec. Mstr. Dec. 15, 2006); Plott v. Sec'y of Health & Human Servs., 1997 U.S. Claims LEXIS 313, at *5 (Fed. Cl. Spec. Mstr. April 23, 1997). Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[10]

---

[8] See Motion, Exhibit A at 4-8, 11-12, 16, 18.

[9] See Motion, Exhibit A at 19-23.

[10] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 68 (revised April 21, 2016) found at www.cofc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (Section X, Chapter 3, Part B(1)(b)).

### 2. Duplicative and Vague Billing Entries

The undersigned has previously found it reasonable to decrease an award of attorneys' fees for vagueness. See Bondi v. Sec'y of Health & Human Servs., No. 15-749V, 2016 WL 1212890 (Fed. Cl. Spec. Mstr. Mar. 4, 2016) (reduced counsel's overall fee award due to vague billing entries); See also Barry v. Sec'y of Health and Human Servs., 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reduced a fee award by ten percent due to vague billing entries).

After reviewing the billing records, the undersigned finds that petitioners' counsel included entries that are so vague that they do not provide enough information to determine whether the task is compensable.[11] Several of the entries are simply for a periodic review of the file, but do not explain for what purpose the file and notes needed to be reviewed so frequently. These entries are also duplicative in that they all have the exact same text describing file review, with no variation for explaining each particular review of the file. These types of entries are too vague to make a determination whether the time expended was reasonable and whether it should be compensated.

Similarly, every status conference with a special master contains the exact same text in regards to the preparation before the status conference and the actions taken afterwards.[12] Billing entries should be contemporaneous and reflect the actual time expended.[13] When entries are copied word-for-word, they are too vague and duplicative to determine the reasonable hours expended on that particular task. Many of the billing entries not already mentioned were duplicative as well.[14] For example, the same billing entry describing Mr. Cohan reviewing the file, case notes, and "current study on daughter" appears three times in the billing records. Motion, Exhibit A at 6.

Due to the volume of excessive, duplicative, and vague billing entries, the undersigned **reduces petitioners' requested fees by thirty percent**.

---

[11] See Motion, Exhibit A at 1-2, 4-8, 11-12, 14-16.

[12] See Motion, Exhibit A at 6-9, 11, 15-17, 19, 21.

[13] Guidelines for Practice at 68 (Section X, Chapter 3, Part B(1)(b)).

[14] See generally Motion, Exhibit A.

### iii. Reduction of Requested Fees

Reducing the requested attorney rates to those above results in the following adjustments:

| Year | Person | Time | Requested Rate | Adjusted Rate | Billed Amount | Adjusted Amount |
|---|---|---|---|---|---|---|
| 2008 | Cohan | 2.50 | $400.00 | $332.00 | $1,000.00 | $830.00 |
| 2009 | Cohan | 49.50 | $400.00 | $342.00 | $19,800.00 | $16,929.00 |
| 2009 | Hague | 16.30 | $275.00 | $126.00 | $4,482.50 | $2,053.80 |
| 2010 | Cohan | 21.40 | $400.00 | $352.00 | $8,560.00 | $7,532.80 |
| 2010 | Carney | 0.40 | $225.00 | -- | $90.00 | $90.00 |
| 2010 | Hague | 4.30 | $275.00 | $194.00 | $1,182.50 | $834.20 |
| 2011 | Cohan | 24.10 | $400.00 | $367.00 | $9,640.00 | $8,844.70 |
| 2011 | Carney | 2.10 | $225.00 | -- | $472.50 | $472.50 |
| 2011 | Hague | 0.50 | $275.00 | $202.00 | $137.50 | $101.00 |
| 2012 | Cohan | 14.50 | $400.00 | $378.00 | $5,800.00 | $5,481.00 |
| 2012 | Carney | 4.10 | $225.00 | -- | $922.50 | $922.50 |
| 2013 | Cohan | 94.30 | $400.00 | $386.00 | $37,720.00 | $36,399.80 |
| 2013 | Carney | 20.60 | $225.00 | -- | $4,635.00 | $4,635.00 |
| 2014 | Cohan | 45.70 | $400.00 | -- | $18,280.00 | $18,280.00 |
| 2014 | Carney | 9.50 | $225.00 | -- | $2,137.50 | $2,137.50 |
| 2014 | Carney | 3.70 | $275.00 | -- | $1,017.50 | $1,017.50 |
| 2015 | Cohan | 5.20 | $400.00 | -- | $2,080.00 | $2,080.00 |
| 2015 | Carney | 58.70 | $275.00 | -- | $16,142.50 | $16,142.50 |
| 2016 | Cohan | 27.50 | $400.00 | -- | $11,000.00 | $11,000.00 |
| 2016 | Carney | 14.90 | $275.00 | -- | $4,097.50 | $4,097.50 |
| 2016 | Carney | 9.60 | $290.00 | -- | $2,784.00 | $2,784.00 |
| 2017 | Cohan | 203.50 | $400.00 | -- | $81,400.00 | $81,400.00 |
| 2017 | Carney | 194.10 | $290.00 | -- | $56,289.00 | $56,289.00 |
| 2008 - 2017 | Paralegals | 20.6 | $135.00 | -- | $2,781.00 | $2,781.00 |
| | | | | Billed Amount Total: | $292,451.50[15] | |
| | | | | **Adjusted Amount Total:** | | **$281,609.80** |

---

[15] Petitioners request $292,587.50 in attorneys' fees. Motion at 3. After accounting for errors, the amount was adjusted to $292,451.50. For example, Mr. Carney billed one entry in 2010 at a rate of $275 per hour, when he should have billed at $225 per hour. Motion, Exhibit A at 5. This entry appears erroneous and was adjusted to reflect his appropriate rate.

The rate adjustments shown above reduce the billed amount to $281,609.80, **a reduction of $10,841.70**. As also discussed, the undersigned makes a further reduction of 30 percent ($84,482.94)[16] to address the deficient billing practices. Thus, petitioner is awarded a total of **$197,126.86** in attorneys' fees.

### b. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioners request a total of $149,816.01 in costs. Motion at 3. Most of the costs are related to expert fees and costs, collecting medical records, filing the claim, and for courier services. See generally Motion, Exhibit B. After reviewing the invoices submitted by counsel, the undersigned finds that the costs appear overall to be reasonable, with several exceptions.

First, counsel billed for Acela Express train tickets to and from the hearings. Additional Documentation dated October 13, 2017 at 5-11. Other special masters have declined to compensate petitioners for first-class airfare and found that this policy extended to business-class train fare as well. See McCulloch, 2015 WL 5634323 at *22; See also Ladue v. Sec'y of Health & Human Servs., No. 12-553V, 20167 WL 2628169 (Fed. Cl. Spec. Mstr. May 25, 2017) (cautioning counsel that business-class train fare would not be reimbursed in the future). The undersigned will compensate petitioners' counsel for their train fare, but cautions that Acela Express train fare will not be compensated in the future.

Counsel also billed for drinks from the in-room minibar and for movies purchased from the hotel while traveling for the hearing. See Additional Documentation dated October 13, 2017 at 1-3. The costs for the minibar purchases total $57.70, and the costs for the movies total $23.19. Costs for drinks from the in-room minibar are not reimbursable by the Program. Reginelli v. Sec'y of Health & Human Servs., No. 14-972V, 2016 WL 1161309 (Fed. Cl. Spec. Mstr. Mar. 1, 2016); Bhuyian v. Sec'y of Health & Human Servs., No. 05-1269V, 2015 WL 2174208, at *8 (Fed. Cl. Spec. Mstr. Apr. 16, 2015); Macrelli v. Sec'y of Health & Human Servs., No. 98-103V, 2012 WL 229811, at *11 (Fed. Cl. Spec. Mstr. Jan. 30, 2002). Costs for movies are similarly disallowed. Watson v. Sec'y of Health & Human Servs., No. 91-1354V, 1992 WL 181022 (Fed. Cl. Spec. Mstr. Jul. 2, 1992). The undersigned also declines to reimburse for these expenses.

Counsel was unable to produce receipts or invoices for several of their expenses, including train tickets and meals.[17] Additional Documentation dated October 13, 2017 at 1-2. The undersigned is unable to award compensation for expenses that do not include appropriate documentation.[18] Other special masters have declined to compensate for costs that were not

---

[16] $281,609.80 x 0.30 = $84,482.94

[17] Those expenses include: $300 Willard Hotel charge; $81.00 parking charge at Amtrak station; $533.07 for dinner for counsel and experts; $90.00 parking charge at Amtrak station; $53.00 parking charge; and $525.76 for dinner for counsel and experts.

[18] Guidelines for Practice at 68 (Section X, Chapter 3, Part (C)(2) & Chapter 7, Part (B)(2)).

adequately documented. See Sabella v. Sec'y of Health & Human Servs., No. 02-1627, 86 Fed. Cl. 201 at *225-26; Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2012 WL 952263 (Feb. 29, 2012); Stone v. Sec'y of Health & Human Servs., No. 04-1041V, 2010 WL 3790297 (Sep. 9, 2010). The undersigned declines to reimburse counsel for the $1,058.83 spent on meals for which they have not produced adequate documentation, as these costs seems excessive on their face. However, the undersigned will reimburse counsel for half of the other costs for which they were unable to provide adequate documentation.

The undersigned reviewed the invoices submitted by petitioners' experts and found their hours and expenses to reasonable. Dr. Steinman billed for 135.5 hours from 2013-2017 at a rate of $500.00 per hour, which the undersigned finds reasonable given his qualifications and his experience in the Program. Motion, Exhibit C at 2. Petitioners request $64,750 for work performed by Dr. Steinman, and $2,986 for his related costs, which makes the total request for reimbursing Dr. Steinman $67,736. Id. Petitioners' other expert, Dr. Utz, billed for 111.25 hours at a rate of $500.00 per hour, which the undersigned also finds reasonable due to his qualifications and experience in the Program. Motion, Exhibit D at 4. Petitioners request $55,625 for work performed by Dr. Utz, and $4,129.38 for his related costs, which makes the total request for reimbursing Dr. Utz $59,754.38. Id. The expenses incurred by the experts were well-documented and did not appear excessive. In fact, Dr. Steinman documented that he split the costs of the hotel between this and another case for which he was also in Washington, D.C. on the same dates. Motion, Exhibit C at 2. He also removed charges that are not reimbursable, like in-room minibar charges, before he calculated and submitted his costs. Id. The undersigned thus awards costs for petitioners' experts and their related expenses in full.

After reducing the requested costs for the issues detailed above, the undersigned awards $148,414.29[19] in costs to petitioners, **a reduction of $1,401.72**.

### III. Conclusion

For the reasons set forth above, the undersigned finds that petitioners are entitled to an award of interim attorneys' fees and costs. The amount of the award is as follows:

| | |
|---|---|
| Requested attorneys' fees: | $292,451.50 |
| Reductions (attorney rates) | - $10,841.70 |
| Reductions (30% for billing deficiencies) | - $84,482.94 |
| **Adjusted Fees Total:** | **$197,126.86** |
| | |
| Requested attorneys' costs: | $149,816.01 |
| Reductions | $1,401.72 |
| **Adjusted Costs Total:** | **$148,414.29** |
| | |
| **Total Interim Attorneys' Fees and Costs Awarded:** | **$345,541.15** |

---

[19] $149,816.01 - $80.89 (minibar and movie charges) - $1,058.83 (undocumented meals) - $262.00 (half of other undocumented costs) = $148,414.29.

**Accordingly, the undersigned awards $345,541.15, representing reimbursement for all interim attorneys' fees and costs, in the form of a check jointly payable to petitioners and petitioners' counsel, Anapol Weiss.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgement in accordance herewith.[20]

**IT IS SO ORDERED.**

<div style="text-align:right">s/Nora Beth Dorsey<br>Nora Beth Dorsey<br>Chief Special Master</div>

---

[20] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.